IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-02409-CNS-STV

MOISES ALBINES, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

HOTELENGINE, INC. d/b/a Engine,

    Defendant.

---

# ORDER

---

Before the Court are Defendant's Objections to Magistrate Judge's Order Granting Court-Authorized Notice. ECF No. 79. These objections are almost entirely OVERRULED. The Court SUSTAINS Defendant's objections only to the extent that Defendant seeks to reduce the 90-day opt-in period to a 60-day opt-in period. Otherwise, the magistrate judge's order is AFFIRMED. In addressing Defendant's objections, the Court incorporates the magistrate judge's recitation of this case's factual background. *See* ECF No. 78 at 1–7.[1]

Defendant advances four objections. The Court considers each in turn.

---

[1] Defendant observes there is some dispute as to whether the magistrate judge's order is dispositive under Rule 72. *See* ECF No. 79 at 4; *Harris v. Startek USA, Inc.*, No. 22–cv–00437–RM–NYW, 2022 WL 2068990, at *4 n.2 (D. Colo. May 11, 2022). The Court need not resolve this issue, *see id.*, because under both *de novo* and *clear error* review the magistrate judge's order is affirmable, again except as to the determination regarding the 90-day opt-in period.

***First***, Defendant argues that the magistrate judge "disregarded evolving case law requiring a more rigorous standard" than the one the magistrate judge applied. ECF No. 79 at 4 (citation modified); *see also id.* at 6 (citing *Swales v. KLLM Trans. Servs. LLC*, 985 F.3d 430 (5th Cir. 2021)). Defendant invited the magistrate judge to apply such a standard and the magistrate judge explicitly rejected this invitation. *See* ECF No. 78 at 17 ("The Court rejects [Defendant's] invitation to use a more stringent 'gate-keeping' approach to determine whether employees are similarly situated for notice purposes."). Such rejection is entirely consistent with law that binds both the magistrate judge and this Court. *See, e.g., Wilfong v. TTEC Servs. Corp.*, No. 1:24–cv–01076–CNS–KAS, 2025 WL 580474, at *2 (D. Colo. Feb. 21, 2025) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)). That other circuits, such as the Fifth Circuit in *Swales*, have crafted standards Defendant argues are more stringent than *Thiessen*'s "ad hoc approach" does not matter. *See, e.g., Singh v. Baltazar*, No. 1:26–cv–00336–CNS, --- F. Supp. 3d ----, 2026 WL 352870, at *3 (D. Colo. Feb. 9, 2026) ("The Court is bound only by decisions from the United States Supreme Court and the Tenth Circuit."); *Green v. Perry's Restaurants Ltd*, No. 21–cv–0023–WJM–NRN, 2022 WL 16744795, at *2 (D. Colo. Nov. 7, 2022) (declining to "follow the Fifth Circuit's approach in *Swales* . . . as *Swales* is not binding Supreme Court or Tenth Circuit authority" (citation modified)); *Morris v. MPC Holdings, Inc.*, No. 20–cv–02840–CMA–NYW, 2021 WL 4124506, at *2 (D. Colo. Sept. 9, 2021) (observing that courts are "bound by long-standing Tenth Circuit precedent mandating the application of the two-step conditional certification process" and declining to follow *Swales*).

2

Accordingly, the magistrate judge did not err by "disregard[ing] evolving case law." ECF No. 79 at 4. To the contrary: the magistrate judge properly adhered to binding case law from this circuit.

The Court pauses to make one observation. Defendant quibbles with the stringency of the magistrate judge's—and, by extension, the circuit's—standard for its *similarly situated* analysis. *See, e.g.,* ECF No. 79 at 5. According to Defendant, application of this binding standard is risky and prejudicial. *See id.* And to read Defendant's objections, it would appear that the Seventh Circuit likewise harbors these same *risk* concerns. *See id.* ("That's because of the risk that "overly permissive notice standards will allow plaintiffs to artificially expand the size of a collective, 'increasing pressure to settle,' no matter the action's merits." (quoting *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 907 (7th Cir. 2025)). But it's dishonest to suggest the Seventh Circuit *itself* harbors these same concerns, when reading *Richards* confirms that the Seventh Circuit's discussion of "overly permissive notice standards" attends to what matters to *defendants*: "Notice also matters greatly to defendants, who worry that overly permissive notice standards will allow plaintiffs to artificially expand the size of a collective, increasing pressure to settle, no matter the action's merits." 149 F.4th at 907 (citation modified).

*Richards* actually *supports* the magistrate judge's thorough discussion and is entirely consistent with the FLSA and the same Supreme Court authority cited by the magistrate judge. *See* ECF No. 78 at 8 (citing *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989)). Turn to the decision: "Requiring plaintiffs to prove their similarity by a preponderance of the evidence to secure notice is unworkable and inconsistent with

*Hoffmann-La Roche* . . . . In such cases, this heightened requirement for notice functions as an insurmountable barrier for even meritorious collective actions. This result is incompatible with the Court's express instruction that the 'broad remedial goal of the [FLSA] should be enforced to the full extent of its terms.'" *Richards*, 149 F.4th at 911–12 (quoting *Hoffman-LaRoche*, 493 U.S. at 173). And, putting aside that these developments are occurring elsewhere—and therefore non-binding—to the extent that Defendant argues there is a sea change in *similarly situated* law, the Court is not persuaded.[2]

**Second**, Defendant argues that the magistrate judge "misapplie[d] the 'similarly situated' standard." ECF No. 79 at 7 (citation modified). This argument is not persuasive. There was nothing "automatic," *id.*, about the magistrate judge's analysis—conducted over twenty-five pages. *See generally* ECF No. 78. And the magistrate judge did more than simply "rely almost entirely on the fact that [Defendant] classified certain Sales Employees as exempt." ECF No. 79 at 7 (citation modified). Indeed, the magistrate judge recognized differences between job families, including Account Executives, Account Managers, and Sales Associates. *Compare id.*, *with* ECF No. 78 at 14–15. But the magistrate judge determined that, *despite* these differences, Plaintiff alleged, and the record showed, that he and "other Sales Employees were the subject of a common plan

---

[2] Nor is the Court persuaded that Defendant is "prejudiced" by the magistrate judge's adherence to and application of binding legal authority. ECF No. 79 at 6. The magistrate judge's analysis—simply because it resulted in an adverse outcome for Defendant—does not improperly "carr[y] the seal of judicial endorsement." *Id.* Particularly where such analysis was thorough, well-reasoned, based on the current record, and contended meaningfully with the same argument that Defendant advances here. *See, e.g.,* ECF No. 78 at 18 ("The Court finds that Plaintiff, through his First Amended Complaint, his affidavit, and accompanying supporting documents and numerous other affidavits, has adequately alleged that he and other Sales Employees were the subject of common plan or policy."). Moreover, Defendant offers no evidence in support of the proposition that it will suffer "reputational harm" because it must issue notices. ECF No. 79 at 6.

4

or policy." *Id.* at 18. "Specifically . . . that *all* Sales Employees, *regardless of title or position*, were deemed to be exempt [and] the across-the-board declaration that Sales Employees were exempt is certainly a *company-wide policy.*" *Id.* (emphases added). And the magistrate judge continued, identifying similarities between Sales Employees despite differences between job families:

> All Sales Employees shared common job duties of selling [Defendant]'s products. They were all paid a base salary plus commission. All seem to have been subject to an aggressive corporate culture where a failure to achieve certain sales metrics could result in termination, creating an environment where unpaid overtime work would been expected or required to hit sales quotas. The affidavits submitted by Plaintiff and other Sales Employees span at least six job titles or job ranks, across four locations supervised by 16 managers, and indicate that the employees all worked overtime and that their managers knew they were working overtime.

ECF No. 78 at 19.

This is sufficient not only for Plaintiff to meet his *conditional certification* burden, but also for the magistrate judge's order to survive Defendant's objection. *See, e.g., Kovacs v. G4S Secure Sols. (USA) Inc.*, No. 20–cv–3180–RMR–KMT, 2022 WL 1402097, at *3 (D. Colo. Jan. 18, 2022) (concluding that plaintiff met "notice stage certification" where plaintiff set forth substantial allegations that employees "were the victims of the alleged policy or plan"); *Thiessen*, 267 F.3d at 1102 ("[A] court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (citation modified)); *Richards*, 149 F.4th at 913 ("[A] plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or

policy."). For these reasons, Defendant fails to persuade that the magistrate judge erred in his *similarly situated* analysis.

**Third**, Defendant argues that the magistrate judge "improperly authorized notice to those with arbitration agreements." ECF No. 79 at 8. Defendant acknowledges that the Tenth Circuit has yet to rule on the propriety of first issuing notice to any potential collective members with arbitration agreements. *See* ECF No. 79 at 8. And some cases outside of the Tenth Circuit and this judicial district tend to support Defendant's argument. *See, e.g., Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 684 (9th Cir. 2025) (agreeing that "it is an abuse of discretion to authorize notice to employees if it is undisputed that their claims are subject to arbitration" but "declin[ing] to adopt any bright-line rule requiring district courts in all cases to make conclusive determinations regarding the arbitrability of prospective opt-in plaintiffs' claims prior to the dissemination of notice"). But the magistrate judge did not determine that it was "undisputed" certain Sales Employees definitively had arbitration agreements. *See id.* Rather, the magistrate judge determined that "notice should go to all Sales Employees, even where [Defendant] has an *argument* that some percentage of those *may* be subject to arbitration agreements." ECF No. 78 at 20 (emphases added). This is not only consistent with cases such as *Harrington*, but cases from within the Tenth Circuit. *See, e.g., Wilfong*, 2025 WL 580474, at *5 (concluding that "[w]hether members of the putative FLSA collective are subject to arbitration agreements should be raised at the second stage of the certification analysis" and collecting cases).

Accordingly, Defendant fails to persuade that the magistrate judge erred in concluding that "notice should go to all Sales Employees," ECF No. 78 at 20, notwithstanding any argument that some *may* have arbitration agreements. Especially where, as discussed above, this issue can be resolved later.

***Fourth***, Defendant argues that the magistrate judge's order "authorizes an overbroad, multi-platform notice campaign." ECF No. 79 at 9. According to Defendant, the magistrate judge authorized an improperly "expansive and sustained notice program," *id.*, and that specifically LinkedIn outreach is unnecessary, *id.* at 10, as well as that the use of a "standalone website" is improper based on the current record, *id.* The Court has reviewed all of Defendant's *overbreadth* arguments and rejects them. Authorizing notice across numerous messaging platforms, including through the use of a LinkedIn message, is wholly appropriate. Especially where, as Plaintiff persuasively explained in his underlying reply brief, a website is fundamentally a supplement to "the other forms of electronic notice [that] provides collective members [with] a modern and convenient way to submit to join forms." ECF No. 66 at 18 n.10. *See also Butler v. Specialized Loan Servicing LLC*, No. 24–cv–01087–PAB–SBP, 2025 WL 2617582, at *8 (D. Colo. Sept. 10, 2025) (finding that it was "proper for [the] plaintiff to use a website to communicate with potential opt-in plaintiffs").

It's 2026. People communicate in all sorts of ways. They send text messages, visit websites, and use LinkedIn. Like the magistrate judge, the Court refuses to ignore this reality in determining how to send notices to potential opt-in plaintiffs here. *See, e.g., Martinez-Morales v. Lopez*, No. 5:22–CV–187–BO, 2023 WL 3476158, at *3 (E.D.N.C.

7

Apr. 17, 2023) (authorizing notice, among other methods, "to be distributed by text and/or WhatsApp message, [and] social media including but not limited to Facebook, [and] posting on a website"). Particularly where "[t]he goal is to reach as many potential opt-in plaintiffs as possible." *Sobolewski v. Boselli & Sons, LLC*, No. 16–cv–01573–RM–STV, 2017 WL 4586108, at *3 (D. Colo. Oct. 16, 2017). Notably, in terms of social media notice, Plaintiff seeks only a LinkedIn notice—appropriate in this case, where potential opt-in plaintiffs are technology professionals—and not a barrage of notifications through other social media platforms, bolstering the Court's conclusion that use of LinkedIn for notice purposes is appropriate. *Cf. Beltran v. InterExchange, Inc.,* No. 14–cv–03074–CMA–CBS, 2017 WL 4418684, at *6 (D. Colo. Apr. 28, 2017). This further underscores that, contrary to Defendant's suggestion, Plaintiff's notice "campaign" is not "boundless." ECF No. 79 at 9.

Finally, Defendant challenges the magistrate judge's provision of a 90-day opt-in period. *Compare* ECF No. 79 at 9, *with* ECF No. 78 at 23. On this extremely limited point, the Court agrees with Defendant that reversal is proper. As Defendant observes, Plaintiff agreed in the underlying reply brief to shorten "the opt-in period from 90 to 60 days." ECF No. 66 at 20. The Court takes Plaintiff at his word and therefore overrules the magistrate judge's determination that a 90-day period is proper. Accordingly, in light of Plaintiff's representation, a 60-day opt-in period is proper. *See* ECF No. 66 at 20; *id.* at 11.[3]

\* \* \*

---

[3] The Court notes that this conclusion is premised on Plaintiff's own unambiguous representation, not Defendant's argument that a 90-day opt-in period is essentially *per se* overbroad or improper. *Compare* ECF No. 79 at 11, *with Wass v. NPC Int'l, Inc.*, No. 09–2254–JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011) (observing 60-day opt-in period is "unusually-short" and ordering a 90-day opt-in period).

Consistent with the above analysis, Defendant's Objections to Magistrate Judge's Order Granting Court-Authorized Notice. ECF No. 79, are almost entirely OVERRULED. They are SUSTAINED only as to Defendant's objection to the magistrate judge's determination that a 90-day opt-in period is proper. Based on Plaintiff's own representation, the Court reduces such opt-in period to 60-days. Otherwise, the Court AFFIRMS the order of the United States Magistrate Judge.

In light of the Court's order, Defendant's Motion to Stay Production of Class List and Dissemination of Notice Pending Ruling on Objections to Magistrate Judge's Order Re: Conditional Certification, ECF No. 80, is DENIED AS MOOT.

DATED this 13th day of May 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge